In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00044-CV
_____

CAROL ANN DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 13-03-02547 CR

MEMORANDUM OPINION

Carol Ann Davis appeals the order of civil commitment for extended inpatient mental health services. *See* Tex. Code Crim. Proc. Ann. art. 46B.102(d) (West Supp. 2014); Tex. Health & Safety Code Ann. § 574.035(a), (h) (West Supp. 2014). On January 16, 2014, after a hearing on the State's application for civil commitment, the trial court signed an order of civil commitment for extended inpatient mental health services.

1

## Issues on Appeal

Davis raises two issues in her appeal. In her first issue, Davis challenges the findings made by the trial court in support of its order for extended inpatient services. Davis argues that the State failed to prove that she was: (1) suffering severe and abnormal mental, emotional or physical distress; (2) experiencing substantial mental or physical deterioration of her ability to provide for her basic needs, including food, clothing, health or safety; and (3) unable to make rational and informed decisions as to whether or not to submit to treatment. *See* Tex. Health & Safety Code Ann. § 574.035(a)(2)(C).

In her second issue, Davis challenges the trial court's implied finding that Davis received court-ordered inpatient mental health services for at least sixty days during the preceding twelve months. *See* Tex. Health & Safety Code Ann. § 574.035(a)(4). We affirm the trial court's judgment.

## Background Information

Carol Ann Davis was initially charged by complaint and information with the felony offense of retaliation, which allegedly occurred on or about March 6, 2013. The grand jury returned an indictment on May 23, 2013, indicting Davis for retaliation. In the complaint, the State alleged that Davis intentionally and

knowingly harmed or threatened harm to a government employee. Davis allegedly made threatening calls and sent threatening emails to a government employee.

On November 21, 2013, the trial court signed an order for psychiatric examination. Davis was examined by two psychiatrists. The psychiatrists examined Davis on separate dates, but both concluded she suffers from a mental illness. However, their opinions differed with regard to whether she met the criteria for commitment for extended inpatient treatment. *See* Tex. Health & Safety Code Ann. § 574.035(a)(2)(C).

Dr. Aaron Fink, a psychiatrist, testified that Davis suffers from delusional disorder, persecutory type, which is described as a false fixed belief that the government is persecuting her. He testified that the typical treatment for this disorder requires long-term psychotherapy which includes pointing out internal inconsistencies so the patient will start to question the basis for the patient's conclusions. According to Dr. Fink, he was not aware of any evidence that Davis had ever done anything to harm herself; she was non-threatening to him during their interview; she exhibited no threatening behavior in the jail; and he was not aware of any of her other history of threatening behavior. Dr. Fink noted that Davis appeared composed when he saw her and Dr. Fink saw no evidence that her condition was deteriorating or that she was unable to take care of herself.

3

Dr. Seth Silverman, a psychiatrist, testified that he also interviewed Davis. Silverman diagnosed Davis with a subtype of delusional disorder called "paranoid personality disorder, rule out psychotic disorder or a depressive disorder." Dr. Silverman added that Davis has a great deal of irritability and mood fluctuation consistent with a mood disorder. In Silverman's interview of Davis, Davis reported to him that "things have gotten a lot worse for her." She told Silverman that with the passage of time, the criminal charges against her had become more severe and more threatening. Davis told Dr. Silverman that the FBI and CIA plots had gotten worse the more time she spent pursuing "her cause." Dr. Silverman spoke with Davis, as well as the State's attorney and the person that Davis called her "civil rights attorney." Dr. Silverman testified that the charges had increased in severity. According to Dr. Silverman, Davis's condition would continue to deteriorate and she would not willingly seek out mental health treatment. He believed Davis would benefit from medication and inpatient therapy. She required more confrontation and medication compliance than would be available to her in an outpatient setting.

Standard of Review

An order for civil commitment must be supported by clear and convincing evidence. *See* Tex. Health & Safety Code Ann. § 574.035(b)(2) (West Supp. 2014). "Clear and convincing evidence is 'that measure or degree of proof which

4

will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). A trial court may order a proposed patient to receive court-ordered extended inpatient mental health services when the factfinder finds, from clear and convincing evidence, that (1) the proposed patient is mentally ill; (2) as a result of that mental illness, the proposed patient (A) is likely to cause serious harm to himself or herself, (B) is likely to cause serious harm to others, or (C) is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his or her ability to function independently, which is exhibited by his or her inability, except for reasons of indigence, to provide for his or her basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment; (3) his or her condition is expected to continue for more than ninety days; and (4) he or she has received court-ordered inpatient mental health services under this subtitle or under Chapter 46B, Code of Criminal Procedure, for at least sixty consecutive days during the preceding twelve months. Tex. Health & Safety Code Ann. § 574.035(a). The evidence must include both expert testimony that the patient is mentally ill and evidence of a recent overt act or of a continuing pattern

5

of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his or her ability to function in everyday activities. Tex. Health & Safety Code Ann. § 574.035(e) (West Supp. 2014).

To determine whether the evidence is legally sufficient to meet a clear and convincing burden of proof, we review all the evidence in the light most favorable to each finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true, resolving disputed facts in favor of the finding if a reasonable factfinder could have done so, and disregarding all contrary evidence unless a reasonable factfinder could not have done so. *K.E.W.*, 315 S.W.3d at 20. In reviewing the evidence for factual sufficiency, we give due consideration to any evidence the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We reverse the decision of the factfinder only if, based on the entire record, a factfinder could not reasonably have formed a firm belief or conviction that the allegations in the application for commitment were proven. *Id.*

## Criteria for Inpatient Treatment

In issue one, Davis argues the State failed to meet its burden of proving Davis suffers severe and abnormal mental, emotional or physical distress, is

experiencing substantial mental or physical deterioration of her ability to provide for her basic needs, and is unable to make rational and informed decisions as to whether or not to submit to treatment. *See* Tex. Health & Safety Code Ann. § 574.035(a)(2)(C). She acknowledges that Dr. Silverman testified that, in his opinion, "I doubt that she would attend a voluntary or even involuntary [outpatient] setting and needs a lot more work." But, Davis argues, this evidence does not support a finding under section 574.035(a)(2)(C) because Dr. Silverman failed to explain why Davis could not be ordered to participate in outpatient services as a condition of bond in her criminal case. *Id.* As the factfinder, the trial court could consider Dr. Silverman's statement to mean that in Dr. Silverman's opinion Davis would not attend outpatient services even if it was ordered as a condition of bond.[1]

Both of the psychiatrists testified that Davis suffers from paranoid delusions of imagined persecutions, but from their different interviews the two psychiatrists reached different conclusions regarding Davis's level of function and whether her condition was deteriorating. *See* Tex. Health & Safety Code Ann. § 574.035(a)(2)(C), (e). Dr. Silverman testified that Davis exhibited "a great deal of

---

[1]Davis does not cite authority for court-ordered mental health services as a condition of bond. Article 17.032 of the Texas Code of Criminal Procedure provides for ordering mental health treatment as a condition of bond for a mentally ill defendant, but the statute applies only to persons who are competent to stand trial. *See* Tex. Code Crim. Proc. Ann. art. 17.032(b)(3), (c) (West Supp. 2014).

irritability" and mood fluctuations, while Dr. Fink found her to be "very calm" and "composed." Dr. Fink spoke with the jailer, who stated that Davis had not exhibited threatening behavior in the jail, but in her interview with Dr. Silverman, Davis reported that "things have gotten a lot worse for her" and Dr. Silverman spoke with her former counsel[2] about the fact that Davis's condition had deteriorated over time and that the charged conduct increased and became more threatening. Each expert explained the basis for his opinion, and in the exercise of its function as the factfinder, the trial court could have reasonably determined to give Dr. Silverman's opinion testimony greater weight than Dr. Fink's opinion testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

Viewing the evidence in the light most favorable to the finding, and disregarding contrary evidence that a factfinder could have reasonably disbelieved, the trial court could reasonably have formed a firm conviction or belief that Davis meets the criteria for continued inpatient treatment. *See* Tex. Health & Safety Code Ann. § 574.035(a)(2)(C). Reviewing the whole record, we conclude that, although there is some disputed evidence, this evidence is not so significant that a reasonable factfinder could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that Davis is suffering severe and abnormal

---

[2]The record reflects Davis gave permission for Silverman to speak to her attorney.

mental, emotional or physical distress, that she is experiencing substantial, mental or physical deterioration of her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for herself and her needs, and that she is unable to make a rational and informed decision as to whether or not to submit to treatment. *Id.* We overrule issue one.

Court-Ordered Mental Health Services

In issue two, Davis challenges the sufficiency of the evidence supporting the implied finding that she received court-ordered inpatient mental health services, under chapter 574 of the Texas Health and Safety Code or chapter 46B of the Texas Code of Criminal Procedure, for at least sixty consecutive days during the preceding twelve months. *See* Tex. Health & Safety Code Ann. § 574.035(a)(4). Davis concedes she was committed but argues there is no evidence that she received treatment.

On June 18, 2013, the trial court signed an order committing Davis to inpatient treatment for a period not to exceed 120 days. During cross-examination by Davis's counsel, Dr. Silverman was asked, "Were you aware that she had spent six months at Geo Care as a committed patient?" Dr. Silverman responded, "She told me that." Defense counsel also suggested the period of commitment had been 120 days, not six months. The trial court took judicial notice of the Geo Care

9

report, dated October 30, 2013, less than three months before the hearing. The report included a statement that Davis was transferred to the treatment facility on July 17, 2013, pursuant to article 46B of the Texas Code of Criminal Procedure after being found incompetent to stand trial. The psychiatric evaluation in the report describes the extent of Davis's participation in therapy during her hospitalization, and provides dates and details indicating that Davis received inpatient treatment services. The trial court could have formed a firm conviction or belief that Davis received court-ordered inpatient mental health services for at least sixty consecutive days in the preceding twelve months. We overrule issue two.

## Conclusion

Based upon our review of the record, we conclude that the evidence is legally sufficient to support the trial court's order for extended inpatient mental health services. Therefore, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on September 3, 2014
Opinion Delivered September 25, 2014
Before McKeithen, C.J., Kreger and Johnson, JJ.